# UNITED STATES DISTRICT COURT   **SEALED**

__SOUTHERN__ DISTRICT OF __CALIFORNIA__

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

RACHELLE LYNETTE CARLOCK
BUREAU OF PRISONS# 06313-298

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

Case Number: **'08 MJ 8644**

I, STEVEN S. HYMAS being duly sworn depose and say:

I am a(n) Special Agent with Federal Bureau of Investigation and have reason to believe
_Official Title_

that ☑ on the person of or ☐ on the property or premises known as (name, description and/or location)

RACHELLE LYNETTE CARLOCK
BUREAU OF PRISONS# 06313-298

in the __SOUTHERN__ District of __CALIFORNIA__

there is now concealed a certain person or property, namely (describe the person or property to be seized)

REFER TO ATTACHMENT A

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

evidence of the commission of a criminal offense.

concerning a violation of Title __18__ United States Code, Section(s) 2332a, 2332a(a)(3), 844(f) & 924(c)

The facts to support a finding of probable cause are as follows:

REFER TO ATTACHED AFFIDAVIT OF FBI SPECIAL AGENT HYMAS.

FILED
JUL 15 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Continued on the attached sheet and made a part hereof: ☑ Yes ☐ No

_/s/ Steve H_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

7-15-08 @ 10:23 a.m. at EL CENTRO CALIFORNIA
Date                                                City            State

Peter C. Lewis            U.S. Magistrate Judge
Name of Judge             Title of Judge             Signature of Judge

**ATTACHMENT A**

<u>ITEMS TO BE SEIZED</u>

The items to be seized are evidence of violations of 18 U.S.C. § 2332a, 18 U.S.C. § 2332a(a)(3), 18 U.S.C. § 844, and 18 U.S.C. § 924(c), specifically:

No fewer that twenty-five (25), and no more than forty (40) full length head hairs (not cut), and ten (10) head hair combings.

FILED
JUL 1 5 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

'08 MJ 8644

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | Magistrate Case No.: _____ |
| RACHELLE LYNETTE CARLOCK<br>Bureau of Prisons# 06313-298 | AFFIDAVIT OF FBI SPECIAL AGENT<br>STEVEN S. HYMAS IN SUPPORT OF<br>SEARCH WARRANT APPLICATION |
| ELLA LOUISE SANDERS<br>Bureau of Prisons# 09885-298 | |

I, Steven S. Hymas, being first duly sworn, hereby depose and say:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and I have been so employed for approximately five months. I am currently assigned to the Imperial County Resident Agency of the San Diego Field Office.

2. I received extensive training in the preparation and execution of search warrants while at the FBI Academy in Quantico, Virginia.

3. The information set forth in this affidavit was communicated to me by Special Agent W. David Pleasance of the FBI's San Diego Field Office. Special Agent Pleasance relied on his personal knowledge of the investigation described herein, as well as information made available to him by other law enforcement officers and agencies. Because this affidavit is being submitted for the limited purpose of obtaining a search warrant for the

1

persons of Ella Louise Sanders and Rachelle Lynette Carlock, I have not set forth each and every detail obtained over the course of this investigation, but rather only those facts and circumstances that I believe are necessary to establish probable cause to believe that evidence of federal violations, as described hereafter, are presently located on the persons of Ella Louise Sanders and Rachelle Lynette Carlock.

## VIOLATIONS BEING INVESTIGATED

4. Special Agent Pleasance is investigating violations of the following statutes, among others: Title 18, United States Code, Section 2332a (Conspiracy to Use a Weapon of Mass Destruction); Title 18, United States Code, Section 2332a(a)(3) (Use of a Weapon of Mass Destruction); Title 18, United States Code, Section 844(f)(1) (Malicious Damage to Buildings or Real Property by Means of an Explosive); and Title 18, United States Code, Section 924(c) (Possession of Destructive Device in Relation to a Crime of Violence), arising from the use of pipe bombs in the Southern District of California, including the bombing of the Edward J. Schwartz Federal Courthouse (hereinafter "courthouse"), located at 940 Front Street, San Diego, California.

## PERSONS TO BE SEARCHED

5. Based on the facts and circumstances laid out below, I believe probable cause exists that justifies:

(a) the search of Ella Louise Sanders and the seizure of samples of her head hair. Sanders is a black female approximately sixty-three inches tall and 56 years of

2

age, whose Bureau of Prisons Register Number is 09885-298. She is presently in the custody of the San Diego Metropolitan Correctional Center, run by the United States Bureau of Prisons, located at 808 Union Street, San Diego, California, 92101;

(b) the search of Rachelle Lynette Carlock and the seizure of samples of her head hair. Carlock is a black female approximately sixty three inches tall and 31 years of age, whose Bureau of Prisons Register Number is 06313-298. She is presently in the custody of the Western Region Detention Facility at San Diego, run by The GEO Group, Inc., located at 220 C Street, San Diego, California 92101. She was indicted by a federal grand jury in the Southern District of California on June 10, 2008 (Criminal Case No. 08-CR-1895-MMM), for Use of False Identification to obtain Explosive Materials (18 U.S.C. §§ 842(a)(2) and 844(a)), Felon in Possession of Explosive Materials (18 U.S.C. § 842(i)(1)), and Fraud in Connection with Identification Documents (18 U.S.C. § 1028A(a)(7) and (b)(2)(B)).

## THE RECENT BOMBINGS IN SAN DIEGO

6. On April 25, 2008, at approximately 1:30 a.m., an explosive device detonated at the Federal Express Distribution Center in San Diego, California. On May 4, 2008, at approximately 1:41 a.m., a bomb was detonated adjacent to the eastern entrance (front doors) of the federal courthouse in San Diego, California.

## INITIAL FBI INVESTIGATION

7. Representatives of multiple state and federal public safety agencies, including the Federal Bureau of Investigation (FBI), responded to the courthouse. During the response, surveillance videos that captured images of the bomber were located. A review of these surveillance videos revealed that an individual approached the front of the courthouse and placed a bag up against a glass pane. The individual stooped over and ignited the bag. The bag was immediately engulfed in flames, suggesting that it had been saturated with a volatile and flammable substance. It continued burning, with flames reaching multiple feet in height, and shortly thereafter detonated. Among other features, the subject appeared to have dark hair hanging past the shoulders and a dark knit cap over the crown of the head. The person began sprinting away from the device as soon as it was engulfed in flames.

8. Surveillance footage also showed the bombing suspect sprinting away from the vicinity of the burning bag southbound, through trees and grass, and toward the bridgeway over Front Street. The device detonated after the suspect was approximately 100 meters from the front of the building.

## EVIDENCE RECOVERED AT THE COURTHOUSE

9. An FBI Evidence Response Team (ERT) collected physical evidence of the bombing. The ERT collected multiple pieces of debris believed to have originated from the explosive device. Several pieces of metal debris were enmeshed in tattered pieces of

white fabric, which appeared to have been part of the device prior to its detonation. A piece of pipe fragment had adhesive tape fragments attached to it. The evidence was sent to the FBI's Laboratory in Quantico, Virginia.

### INVESTIGATION OF CONNECTIONS BETWEEN TWO BOMBINGS

10. Investigators, on the morning of May 4, 2008, considered whether the earlier bombing on April 25, 2008, at the Federal Express Distribution Center in San Diego, California, was related to the federal courthouse bombing. Accordingly, the physical evidence from the Federal Express Distribution Center bombing was taken into FBI custody and sent to the FBI Laboratory for comparative analysis.

11. The law enforcement officers who investigated the Federal Express device explained that it consisted of two pipe bombs. One of them detonated first, apparently extinguishing the ignition device on the other pipe bomb, leaving it unexploded in the nearby parking lot where it came to rest.

### PRELIMINARY LABORATORY ANALYSIS

12. The FBI laboratory reported that the unexploded pipe bomb recovered at the Federal Express Distribution Center contained powder that was preliminarily determined to be consistent with *Hodgdon's TRIPLE SE7EN* (trademarked spelling) brand powder in the FFG granular size. This powder appears to be an improvement on, and a derivative of, an earlier *Hodgdon* product called *Pyrodex*. Both are considered to be black powder substitutes. The analysis of the bulk powder from this device also indicated that gasoline

5

was present.

13. The FBI laboratory reported that residue from the pipe bomb that did explode at the Federal Express Distribution Center was preliminarily consistent with *Pyrodex* or black powder.

14. The FBI laboratory reported that the dimensions of the two pipes used in the Federal Express Distribution Center bombing were identical. They were of one inch nominal diameter and eight inches in length. The pipe bomb that detonated had a product identification sticker on it. The sticker provided the following information regarding the pipe - "1" x 8" GALV STEEL PIPE NIPPLE."

15. The FBI laboratory reported that the device used at the federal courthouse consisted of three separate pipe bombs. One consisted of a two inch nominal diameter pipe nipple that was ten inches in length while the other two were one and a half inch nominal diameter pipe nipples that were ten inches in length. All three were made of galvanized steel. Preliminary examination of residue from fragments of these pipes indicated it was consistent with *Pyrodex* or black powder. Additionally, gasoline was identified on fragments of the black cloth material that came from the back pack destroyed during the fire and bomb detonation.

16. Debris from both bombings indicated that nails were incorporated into their design. Your affiant is aware, because of information received from SA Pleasance, that additional metal components, such as nails, are usually added to bombs in order provide an enhanced anti-personnel effect upon detonation.

17. The FBI Laboratory conducted a search for trace evidence, such as hairs, fibers, powders, et cetera, on the evidence items collected at the scenes of the two bombings. The Laboratory was able to identify head hairs in the evidence submitted from each of the bombing locations. The head hairs were located underneath tape affixed to metal pipe fragments. The Laboratory indicated that they had the ability to compare these hairs with the hairs of individuals suspected of involvement with the bombing. Karen Lowe of the FBI's Explosives Unit explained to Special Agent Pleasance that to conduct such a comparison, a suitable head hair sample would consist of at least 25 full length (not cut) hairs collected from all areas of the head and head hair combings.

### CARLOCK'S STATEMENTS

18. On May 15, 2008, investigating agents interviewed Rachelle Lynette Carlock at the FBI's San Diego Field Office. Carlock acknowledged and waived her Miranda rights before the interview. The following two paragraphs include only some of the statements made by Carlock during the ensuing interview.

19. Carlock admitted that on at least two occasions she used a false identification card to purchase gunpowder at the El Cajon Gun Exchange. She stated that she gave the gunpowder to her friend, Louise "Weezy" Sanders.

20. Carlock told the agents that Sanders was directing her to purchase the gunpowder and metal pipes. She stated that Sanders may or may not have been with her when she purchased the gunpowder and pipes. After the investigators stated that they knew it was

7

Carlock who planted the bomb at the courthouse and asked her if she meant to hurt anyone, she stated "I think it was put there to send a message, I wouldn't hurt nobody." When asked for further details, Carlock stated: "I told you who told me to do it, Weezy. I don't know if Weezy has federal or state cases. I've never had a federal case." Carlock went on to state, "You got me on video tape, I don't give a fuck. I don't know why I did it, I really don't."

### SANDERS' STATEMENTS

21.  On May 15, 2008, Ella Louise Sanders was interviewed by investigators and Sanders stated that Carlock was responsible for the construction and placement of the pipe bombs at the Federal Express store in San Diego and the courthouse. Among other things, Sanders stated that Carlock built the bombs at a residence in Menifee, California, and that Sanders witnessed the construction of those devices. Sanders indicated that she was aware of the locations where pipe bombs were tested and constructed. She was taken from the Riverside Superior Court so she could point out the locations on the ground. She identified an open field where she stated devices were tested. She also identified a residence in Menifee, California, where bombs were constructed.

22.  A search of the field yielded an unexploded pipe bomb. A search of the residence also yielded an unexploded pipe bomb. On May 16, 2008, Sanders was interviewed by investigating agents. After acknowledging and waiving her Miranda rights, Sanders admitted building two pipe bombs with Carlock. She admitted

stealing pipe components from the Home Depot, and she also admitted buying one pound of powder from the El Cajon Gun Exchange. Sanders described how she and Carlock built two bombs by filling the pipe with powder, inserting a fuse and closing the pipe with an end cap. Sanders admitted to helping Carlock braid the fuse out of strips of material. Sanders stated that they built the two bombs in the garage of the residence in Menifee.

23. Sanders stated that she and Carlock tried to detonate the first device in a field, but it failed to detonate. She stated that Carlock successfully detonated the second device down the street from the residence in Menifee. According to Sanders, she then helped Carlock steal more pipe materials from the Home Depot.

24. Sanders stated that Carlock was responsible for the Federal Express bombing and that she acted alone. Sanders stated that Carlock bragged to her about bombing the Federal Express office. As for the courthouse, Sanders stated that Carlock was the individual who built and placed the bomb at the courthouse. Among other things, Sanders stated that, on the night of the courthouse bombing, she helped Carlock conceal her hair underneath a beanie cap. Sanders stated that she saw Carlock place the bomb in a backpack along with a container of gasoline. Sanders stated that an individual named Eric Robinson drove Carlock to San Diego and dropped her off approximately two blocks from the courthouse. According to Sanders, Carlock then placed the bomb at the courthouse doors, lit the bag on fire, and ran. Sanders stated that Carlock returned to the Menifee residence between 2:00 a.m.

and 3:00 a.m. When Sanders asked what Carlock had done, Carlock responded, "I put the bomb in front of the courthouse."

25. On May 20, 2008, Sanders again acknowledged and waived her Miranda rights and was interviewed concerning the bombings. Sanders stated that she helped Carlock build four devices, that two failed to detonate, and that Carlock told her the other two devices successfully detonated near the house in Menifee. Sanders also stated, among other things, that the night before the courthouse bombing she helped Carlock get ready to deliver a bomb to what Sanders believes was to be the Social Security Office. Sanders stated that she saw Carlock build "three fat ones" identical to the bombs previously built, and that the three devices were wrapped together with silver duct tape. Sanders found dark clothing for Carlock and helped conceal her hair. Then, at about midnight on May 3, 2008, Sanders saw Carlock and Eric Robinson leave the Menifee residence with the backpack carrying the bomb. Sanders stated that later, at about 3:30 a.m., Carlock and Robinson returned to the Menifee residence. According to Sanders, Carlock stated, among other things, that she, "Put that mother fucker at the courthouse."

## CONCLUSION

26. Based on the aforementioned information, this affiant submits that there is probable cause to believe that evidence of violations of 18 U.S.C. § 2332a (Conspiracy to Use a Weapon of Mass Destruction), 18 U.S.C. § 2332a(a)(3) (Use of a Weapon of Mass Destruction), 18 U.S.C. § 844 (Malicious Damage to Buildings or

Real Property by Means of an Explosive), and 18 U.S.C. § 924(c) (Possession of Destructive Device in Relation to a Crime of Violence) will be found on the persons of Rachelle Lynette Carlock and Ella Louise Sanders.  Specifically, based on: (1) the discovery of head hairs in the evidence collected from the two bombing scenes; (2) Carlock's statements concerning her role in the courthouse bombing; (3) Sanders' description of her and Carlock's participation in, and/or witnessing of, the construction of pipe bombs at the residence in Menifee; (4) Sanders' description of the device in the backpack taken by Carlock on the night of the courthouse bombing, and (5) Sanders' statements concerning how she helped conceal Carlock's hair, there is probable cause to believe that hairs identified in the submitted evidence were deposited by Carlock and/or Sanders.  Obtaining hair samples from Carlock and Sanders will allow the laboratory to compare those samples to the hairs recovered from the courthouse bombing scene.

27. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment A.

_____
STEVEN S. HYMAS
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 15th day of July, 2008.

_____
PETER C. LEWIS
U. S. Magistrate Judge

11